HUNT SUPER SERVICE, INC., Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—87—0863

Opinion filed July 14, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for appellant.

. Robert T. Lawley, of Routman & Lawley, Ltd., of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On January 18, 1983, plaintiff Hunt Super Service, Inc., filed a complaint against defendant Jim Edgar, Secretary of State, in the circuit court of Sangamon County for administrative review of a decision rendered by defendant concerning plaintiff's liability for registration fees for its fleet of trucks. That court determined defendant had failed to follow its past precedent or to explain its departure therefrom and remanded the case to defendant with directions to do so. On remand, defendant imposed the same assessment of license fees upon plaintiff and explained its reasons why prior precedent was not applicable. On January 28, 1985, plaintiff again filed a complaint for administrative review of defendant's decision. The circuit court reversed defendant's decision in an order dated November 4, 1987. Defendant now appeals from that order. We reverse.

The record showed the State of Illinois had entered into an interstate compact called the International Registration Plan (plan) (92 Ill. Adm. Code 1010 app. B (1985)) whereby fleets of vehicles may operate in various States which are parties to the plan, while the fleet need be registered only in one State, called a base jurisdiction. The base jurisdiction then issues appropriate license plates for the fleets. Fees are required to be paid to the various member States in which the fleet operates based upon the total fee required by that State for operation, reduced by the quotient obtained by dividing the miles traveled in the member State during the previous yearly period by the total miles traveled by the fleet during that same period. (92 Ill. Adm. Code 1010 app. B, art. III, at 13471-72 (1985).) Apparently, under the operation of the plan in Illinois, miles traveled by the fleet in States having a reciprocal agreement with Illinois for free operation of vehicles from member States are not included in the total miles determination.

At the time of application for registration for a particular year, the applicant is required to pay fees based upon the apportionment, as described above, for the preceding year. (92 Ill. Adm. Code 1010 app. B, art. IV(B), at 13472 (1985).) The plan requires fleet operators to maintain individual vehicles mileage records (IVMR's) for the prior three-year period. (92 Ill. Adm. Code 1010 app. B, art. XIII, at 13475-76 (1985).) A fleet operator has the option of paying the full amount of the registration fee to each State. However, if the opera-

tor elects to take advantage of apportionment, failure to maintain records to support the apportionment can, as here, result in an estimation of liability by the plan commissioner, here the defendant, the Secretary of State.

Paul Shute, an auditor for defendant, testified at the hearing that he had visited plaintiff earlier in the year in order to perform an audit of its registration applications under the plan for years 1979 and 1980. To do the audit, Shute said he needed to inspect plaintiff's IVMR's from September 1977 through August 1979. However, the president of plaintiff, James Hunt, informed Shute those records were unavailable. He said the records in question had been taken by an employee of plaintiff during a labor dispute. Shute testified he observed the presence of guards and picketers at plaintiff's place of business and a bullet hole in a window there, all evidence of current labor problems.

James Smith, a witness for plaintiff, testified further regarding the company's labor problems. He said he had been employed by plaintiff since May 1980 and was the person in charge of maintaining and controlling plan records for plaintiff. He testified that, in the spring of 1981, the "Teamsters" tried to organize plaintiff's drivers. The situation became violent and charges were filed against Teamster members. Smith said that, when a National Labor Relations Board representative came to examine plaintiff's records, he discovered IVMR's and other plan records were missing. This labor strife still continued when auditor Shute came to audit plaintiff's books.

Smith further stated he explained the situation to Shute when he arrived. He attempted to provide Shute with the documents he did have available for the years in question, including a large spread sheet containing old mileage reports from log books. According to Smith, Shute responded he could not possibly go by the sheet Smith provided because "the numbers [were] not lined up, [and] they [were] not printed anywhere correct at all."

Shute testified that, after learning the IVMR's he needed were not available, he telephoned his office, and his superior, Arthur Spiegel, told him he should use whatever records were available to perform his audit. According to Shute, he determined the most relevant available IVMR's were those from April 1980 through June 1981. He divided these records into two groups, those for April 1980 through August 1980 and those for September 1980 through June 1981. He decided to select the latter group as the basis for estimating plaintiff's registration fees for 1979 and 1980 because those figures covered a longer time span. Apparently, Hunt agreed with this

decision. The division into two groups was apparently made because each licensing year began on September 1. Shute testified that he then determined the "Illinois factor" for the September 1980 to June 1981 period. That factor was the percentage of the total miles driven throughout the whole United States (miles driven in States subject to reciprocity agreement excluded) which were driven in Illinois. That figure was found to be 13.45%. This percentage was lower than that for the April 1980 through August 1981 period, and thus, the selection of periods gave plaintiff the benefit of the more favorable period.

Shute further testified that, after making the foregoing computations, he then applied the "Illinois factor" to the full license fee for each year that would have been required of plaintiff, absent the existence of the plan, and determined plaintiff's liability for the 1979 and 1980 years. The amount of the full license fees was shown on the face of plaintiff's application for the years in question. Shute stated Hunt then agreed to have his 1981 registration request similarly audited, and Shute then calculated plaintiff's liability for that period in a similar manner. The computations indicated plaintiff owed defendant additional fees in the following amounts: (1) $3,235.47 and interest of $491.51 for 1979; (2) $4,212.45 and interest of $387.43 for 1980; and (3) $2,978.07 and interest of $104.23 for 1981.

On cross-examination, Shute testified nothing indicated plaintiff's president or other personnel had secreted or destroyed the missing records. He further said the records that did exist since April 1980 were kept properly according to the plan. Shute also stated on cross-examination he thought plaintiff's president had told him its operations had changed over the past few years, although Shute said he could not tell whether a change had occurred. He did not make any inquiries about the mentioned changes or perform any additional investigation. He did note plaintiff's fleet had increased but stated such increase did not necessarily result in an increase in miles traveled by plaintiff.

Art Spiegel, a division administrator, also testified at the hearing. Among other testimony, Spiegel stated he told plaintiff's president it could submit any kind of records to refute the records used as a basis for the audit. However, the president responded none were available. Finally, Spiegel noted no formal audit of plaintiff had ever been performed prior to the audit recently done by Shute.

In regard to any change in plaintiff's operations, Spiegel stated the president never indicated to him that the scope of its operations had changed. He did implicitly say, though, that obtaining Interstate

Commerce Commission (ICC) authority and an increase in fleet could change the license fees paid. Plaintiff had no such authority in 1979, but its 1980 application indicated it then obtained ICC authority. Spiegel also admitted plaintiff's fleet increased from 10 vehicles in 1979 to 21 vehicles in 1981 but added the formula used to calculate the factor was based upon the total miles traveled by the fleet; the number of trucks in the fleet did not enter into the formula.

Following the hearing, on January 10, 1983, defendant issued its opinion. In particular, defendant stated:

"The [plaintiff] voluntarily elected to come under the provisions of the IRP. It knew, or at least is estopped from denying that it knew, the record keeping, auditing, and assessment provisions of the IRP. The [plaintiff] did not maintain a security copy of these vital records in some place where they could be protected from loss.

However sympathetic this [plaintiff's] situation is, IRP registrants can not be given an opportunity to manipulate the system to their own advantage by relying upon the loss of required records."

Defendant then entered an order finding the audit of plaintiff to be correct and assessing additional fees of $11,809.16 against plaintiff for 1979, 1980, and 1981. Plaintiff sought review of this decision in the circuit court.

In a brief submitted by plaintiff to the court, plaintiff argued defendant's decision was erroneous because it had failed to adhere to its own past precedent established in *In the Matter of Kroblin Transportation Systems, Inc.* (1982), Ill. Sec. of State Op. and Order, 2149—82. In *Kroblin*, the office of the Secretary of State audited Kroblin's plan applications for 1979, 1980, and 1981. The auditor discovered the records for years 1979 and 1980 had been destroyed by fire, so he used the 1981 records to audit all three years. Applying the new factor, the auditor determined Kroblin owed additional monies for 1979, was entitled to a refund for 1980, and, due to a posting error, was also entitled to a small refund for 1981. The audit revealed Kroblin owed a total net amount of $4,277.29.

Kroblin requested a hearing following the audit. Kroblin's evidence at the hearing indicated both its original and computerized records had been destroyed in the fire. Kroblin also presented evidence that its operation and total miles traveled had increased from 1979 to 1981. Finally, the audit performed with the records for the year 1981 indicated Kroblin was in substantial compliance for that year. In addition, the results of prior audits performed at Kroblin had dis-

closed no significant discrepancies, nor did any evidence indicate Kroblin's 1979 or 1980 plan applications were inaccurate.

The Secretary of State in *Kroblin* accepted the rulings of the hearing officer and procedures followed by the auditor as correct. However, it further stated:

"[I]n deciding situations wherein records are not available I feel that each case must be judged on its own merits. Here, although the records were not available, there is no evidence that they were never maintained, yet did become unavailable due to an unforseeable accident. Also, based upon the [plaintiff's] accuracy of his 1981 application and his prior record of accuracy regarding prior audits, I do not feel that there was any willful attempt to avoid compliance with the International Registration Plan by not maintaining proper records." (*Kroblin*, opinion at 6.)

It decided to reverse the assessments and refunds for the 1979 and 1980 applications and to affirm the refund to which Kroblin was entitled for 1981.

The Sangamon County circuit court agreed with plaintiff's argument that defendant had failed to adhere to its own past precedent of *Kroblin*. It remanded the case back to defendant so that it could enter a decision consistent with its findings.

On remand, defendant reconsidered the matter and, on January 11, 1985, defendant entered an order confirming its prior decision in every respect. Defendant explained what he considered to be the factual difference between the case before it and *Kroblin*, justifying a different decision. In particular, the Secretary found as follows: (1) plaintiff failed to protect its records, even though it knew of the labor dispute in progress and knew or should have known loss of the records as a result of the dispute was foreseeable; on the other hand, in *Kroblin*, the loss of records was not due to the company's negligence; (2) plaintiff had not been audited in the past, while in *Kroblin* prior audits of the company established a past history of accuracy in a comparison of its application with miles actually traveled; and (3) the company in *Kroblin* had other records to compare with plan applications, while plaintiff here did not.

Defendant again filed for administrative review in the circuit court of Sangamon County. After a hearing, that court entered a further order on November 4, 1987, reversing the decision of the defendant. The order concluded plaintiff had not been negligent in losing its records, and, thus, the situation was indistinguishable from that in *Kroblin*. Accordingly, the court determined the defendant had

erred in not following the precedent of *Kroblin*. That order is the subject of this appeal.

■ The United States Supreme Court has held that a "corollary of the general rule requiring that [an] agency explain the policies underlying its action" is a rule that the agency follow the precedent it has established or explain its reasons for departure from the precedent. (*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Board of Trade* (1973), 412 U.S. 800, 807, 37 L. Ed. 2d 350, 362, 93 S. Ct. 2367, 2375.) However, the appellate court of the State has held an agency is not absolutely bound by its prior rulings but can make adjustments to its precedents as long as the adjustments are not arbitrary or capricious. *Citizens Utilities Co. v. Illinois Commerce Comm'n* (1987), 153 Ill. App. 3d 28, 504 N.E.2d 1367.

■ We agree with defendant that *Kroblin* was factually distinguishable in a number of respects. First of all, Kroblin had been audited previously, and, hence, the Secretary of State had before it evidence of Kroblin's reliability, accuracy, and honesty. Clearly, plaintiff here cannot be faulted for defendant's failure to audit it in the past; however, at the same time, we cannot force defendant to accept as accurate conclusory mileage figures contained in plaintiff's applications when defendant had no means of determining the inherent reliability of that company.

Furthermore, Kroblin's records were destroyed under circumstances in which Kroblin was entirely blameless. In addition, Kroblin had apparently taken some precautions by having both original and computerized information. Unfortunately, both were lost in the fire. Plaintiff here, on the other hand, was somewhat more culpable for the loss of its records. Although plaintiff's conduct, or absence of conduct, probably did not amount to negligence as defendant suggests, plaintiff did not take precautions to protect its records by limiting employee access or by keeping duplicate sets.

Finally, we note that in deciding *Kroblin*, the defendant stated: "[I]n deciding situations wherein records are not available, I feel *that each case must be judged on its own merits*," thus giving notice that subtle differences could warrant different treatment. *Kroblin*, opinion at 6.

■ At oral argument, plaintiff also sought to justify the circuit court's reversal of defendant on the basis defendant had not taken into consideration evidence of some changes in operation of plaintiff's vehicles between the period used to determine the "Illinois factor" and the periods upon which the registration fees were required by the plan to be computed. This theory is not argued in plaintiff's

brief. Furthermore, clearly, the time frames considered were the closest available time frames for which records were available, and the auditor selected the time frame which was most favorable to plaintiff because its "Illinois factor" was the smaller of the two.

For the reasons stated, we reverse the circuit court order appealed, thus reinstating the decision of the defendant Secretary of State.

Reversed.

McCULLOUGH and SPITZ, JJ., concur.